## WILEY SNEED v. ROBERT B. WOODWARD.

ONE NOT ACQUIESCING IN THE SURVEY OF LAND NOT BOUND BY IT.—If the owner of a tract of land conveys a mile square of the same to one party, with a description in the deed so uncertain that the boundaries cannot be determined with precision, and soon after sells to another party the same quantity bounded on the north by the first tract, an agreement fixing the lines of the first tract sold, made after the second sale by the common grantor and the first grantee, is not binding upon the second grantee unless he knew of and acquiesced in the location of the lines.

AN OWNER OF LAND NOT BOUND BY SURVEYS OF ADJOINING LAND.—If the owner of land conveys a mile square of the same to one party, with such description that the lines cannot be located with precision, and soon after sells the same quantity to another person, bounded on the north by the first tract sold, and afterwards makes a survey and location of the lines of the first tract sold, in connection and by agreement with the first purchaser, to which survey and location the second purchaser is not a party, and in which he does not acquiesce, and the common grantor afterwards sells to other persons tracts of land adjoining the two first tracts, and surveys and deeds them in accordance with the first survey and loca-

tion, these last surveys and the deeds given to the purchasers are not evidence against the purchaser of the second tract sold, or his grantees, to show that the first tract sold was located in accordance with the calls of the deed to such first purchaser.

WHEN DECLARATIONS OF AN OWNER OF LAND ARE EVIDENCE.—In an action for the recovery of land where the dispute is as to the true boundary line between adjoining proprietors, and where the defendant has built a fence beyond what the plaintiff claims to be the true boundary, the declarations of the plaintiff and his grantor, made during the time of the supposed acquiescence, are admissible in evidence to rebut the presumption that they had acquiesced in the line claimed by the defendant.

APPEAL from the District Court, Seventh Judicial District, Napa County.

On the 19th of March, 1847, Salvador Vallejo conveyed to Silburn W. Boggs a tract of land one mile square, bounded and described as follows: "Beginning at a point near the base of the mountains on the west side of Napa Valley, one half a mile in a southerly direction from where a small branch or brook enters the valley from the mountains, usually known as the Old Rhodare; thence running from the said point of beginning along a line parallel with the base of the mountain in a northerly direction one mile; thence forming a right angle and running in an easterly direction one mile; thence making a right angle and running in a southerly direction one mile; thence making a right angle and running in a westerly direction one mile to the point of beginning, so as to form one square mile, or six hundred and forty acres."

On the 5th of April, 1847, Vallejo conveyed to G. W. Harrison another tract of the same size, bounded as follows: "Bounded on the north by a certain tract of one square mile, which the said Vallejo sold to L. W. Boggs, by deed bearing date the 19th day of March, 1847."

Plaintiff and defendant both claimed under the last deed, the plaintiff claiming the northwest quarter and defendant the southwest quarter. Soon after the conveyance to Harrison, Vallejo and Boggs employed a surveyor named Ide to run and establish the lines of the Boggs tract, but Harrison was not a party to this survey. Plaintiff claimed that by this survey the southern line of the Boggs tract was placed six chains too far

north. Defendant had built a fence for a boundary between him and plaintiff in accordance with this survey, and this fence, if plaintiff's claim was correct, was six chains on his land. The fence had been suffered to remain there several years, and one of the questions at issue was whether plaintiff, by allowing this fence to remain, was estopped by the Statute of Limitations from showing that it was not on the true line.

After the sale to Boggs and Harrison, Vallejo sold other tracts of land adjoining them to Ingersoll, Smith, Truebody, and others, and their tracts were surveyed according to the Ide survey.

On the trial defendant sought to prove these surveys of Ingersoll and others, and to introduce the deeds given to them for the purpose of establishing the correctness of the Ide survey. The Court rejected the evidence. Plaintiff, for the purpose of showing that the Statute of Limitations had not run, was allowed to prove his own declarations and that of his grantors that he and they had never acquiesced in having the fence remain where it was.

Plaintiff recovered judgment, and defendant appealed.

*Williams & Thornton*, for Appellant, argued that they had a right to introduce the excluded evidence for the purpose of showing the correctness of the Ide survey and its recognition by Vallejo and the owners of adjoining tracts; and cited *Owen v. Bartholomew*, 9 Pick. 525; *Waterman v. Johnson*, 13 Id. 266–277; *Makepeace v. Bancroft*, 12 Mass. 472; *Jackson v. Wood*, 13 Johns. 346; *Clark v. Lockwood*, 21 Cal. 323.

*Rayle & Pendergast*, for Respondent, argued that the excluded testimony was inadmissible because the parties had no connection with Harrison, and could not bind him by their acts, as he bought before the Ide survey, and the owners of surrounding tracts of land bought after it, and that their acts had no possible tendency to prove the correctness of the Ide survey.

By the Court, SAWYER, J. :

This is the same case reported under the title of *Sneed* v. *Osborn*, 25 Cal. 619, where a statement of the principal facts will be found.   Our former decision, so far as it is applicable, must control the rights of the parties.   Under the principles of that decision, the survey made by Ide does not affect the rights of the parties, unless Harrison, or those claiming under him, and through whom plaintiff claims, have acquiesced in that location.   The evidence relating to the neighboring tracts purchased by, and surveyed for, Ingersoll, Smith, Truebody and Coombs, was properly rejected.   These were acts of strangers, who, at most, for their own purposes, assumed the existence of a fact—the making of the Ide survey.   But such assumption is no legal evidence, in the action between these parties, that the fact existed.   The fact itself, however, was proved by other and competent evidence, and it is not at all likely that the jury had any doubt as to its existence.   The verdict must have been based upon other considerations.

These remarks apply to all the testimony excluded relating to lands outside the Boggs and Harrison tracts.   So, also, the deeds from Harrison to Angus L. Boggs and Wm. M. Boggs, of the Harrison tract, and the survey of the east half of said tract of A. L. Boggs, were properly excluded.   The deeds do not mention the Ide survey, nor tend in any way to show that Harrison acquiesced in that survey.   The survey of the east half for A. L. Boggs and by his direction, and his occupancy under it might tend to show that A. L. Boggs acquiesced in that survey and location, and that he is estopped from denying the location ; but the plaintiff does not claim under him, and is not affected by his acts.   There is nothing in the testimony offered which tends to show an acquiescence by Wm. M. Boggs.

The acts and declarations of Sneed and McNeil were admissible for the purpose offered.   Osborn, the original defendant in this suit, and under whom Woodward claims, was in possession of the southwest quarter of the Harrison tract up to the

55

line as located according to the Ide survey, excepting ten acres in the northeast corner, which had been sold to McNiel, and which had also been fenced off in accordance with the Ide survey. If, therefore, the Ide survey was erroneous, Osborn was in possession of a portion of the land of Sneed, and a portion of the ten acre tract owned by McNeil subsequently conveyed by him to Sneed, being the land in dispute. The state of the defendant's evidence was such that it might be inferred by the jury that, notwithstanding an erroneous location according to the Ide survey, Sneed, and McNeil, under whom Sneed claimed the ten acre tract, had acquiesced in the erroneous location for a period so long as to estop them from questioning it. It, therefore, became necessary for the plaintiff to rebut such inference, and the only evidence of non-acquiescence during the period in question was, of course, the act and sayings of Sneed and McNeil themselves. It was from their acts and declarations relating to the matter in question that their acquiescence or non-acquiescence must necessarily be inferred. Those acts and declarations must, therefore, necessarily be competent evidence on that point. The evidence was expressly offered for and limited to that purpose. The record discloses no good ground for claiming that their declarations were made in the course of proceedings to effect a compromise in such a manner as to render them inadmissible in evidence on that ground.

The first instruction complained of might, perhaps, have been so framed as to define a little more sharply the idea intended to be conveyed, but it is scarcely possible that the jury could have understood the Judge to state, or assume as proved, the main issue of fact in the case. But assume it to be possible, the instruction is limited to the acts of Harrison alone, and the evidence is positive and uncontradicted by any fact or circumstance that Harrison was not present at the Ide survey, and there is no evidence that he ever knew of it, or subsequently did anything in relation to the land except to convey it in terms in no way recognizing the survey. If there is evidence of acquiescence it is of those claiming under him,

and not of Harrison himself. The third instruction given and complained of when applied to the evidence could not have misled the jury.

The judgment must be affirmed. So ordered.